The UNIVERSITY OF TEXAS AT ARLINGTON

v.

Marvin S. AKERS.

No. 18316.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 30, 1980.

Rehearing Denied Nov. 26, 1980.

**284**

Mark White, Atty. Gen., and Jack Sparks, Asst. Atty. Gen., Austin, for appellant.

Foster & Garrett and Robert Jenks Garrett, Albert G. Hubby, III, Arlington, for appellee.

## OPINION

SPURLOCK, Justice.

Akers brought a cause of action against The University of Texas at Arlington under the Texas Tort Claims Act. He recovered a verdict and judgment. The University appealed.

We reverse and render.

Marvin S. Akers, hereinafter referred to as Akers was a student at The University of Texas at Arlington, hereinafter referred to as University. He sued the University for injuries sustained when he slipped and fell on a University parking lot. He had paid the University a fee for the use of this lot. He alleged that he was a business invitee under Sec. 18(b) of the Texas Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19 (1970), hereinafter referred to as the Act. He alleged the University had a duty to maintain its business premises in a reasonably safe condition for its invitees, the students who had paid a fee to park on the University parking lot. He alleged the University was negligent in maintaining the parking lot in a slippery, iced–over, dangerous condition which created an unreasonable risk of injury to business invitees, including the plaintiff. He alleged that the University was negligent in failing to salt or sand the parking lot. He further alleged that he called the University by phone on the date of the accident to inquire about attending classes and he was advised to go ahead and attend classes. He further alleged that the University was negligent in requiring him to attend classes under such dangerous condition because of the iced and slippery condition of the premises.

In response to special issues, the jury found negligence and proximate cause of the University in "failing to cancel classes on the day in question." The jury found the University was not negligent in "failing to salt or sand the parking lot in question".

The University asserts governmental immunity and that Akers failed to show an exception under the Act. The University further contends that whether the classes should have been closed on the day in question or not was an act of discretion on the part of the governmental unit and that any injury resulting from such discretionary act was expressly excluded from liability created under the Texas Tort Claims Act [Sec. 14(7)].

Governmental immunity is still the general rule in Texas. *Townsend v. Memorial Medical Center*, 529 S.W.2d 264, 267 (Tex. Civ.App.–Corpus Christi 1975, writ ref'd n. r. e.). The general rule is subject, however, to the waiver of immunity contained in the Act. Section 14(7) provides that the Act shall not apply to:

"Any claim based upon the failure of a unit of government to perform any act which said unit of government is not required by law to perform. If the law leaves the performance or nonperformance of an act to the discretion of the unit of government, its decision not to do the act, or its failure to make a decision thereon, shall not form the basis for a claim under this Act."

The University, for several years, had been closing classes when the weather was very bad. Mr. W. A. Baker, vice president of Academic Affairs of the University, had this responsibility. This was a regular policy of the school. The University also had a policy of always holding classes unless there was a decision to close the school that day.

Mr. John Dudley Wetzel, vice president of Business Affairs of the University testified that they closed the University in extremely bad weather because the students would be unable to get there. Akers testified that he was going to school on the G. I. Bill of Rights and that he would be penalized if he failed to attend the classes. Akers also testified that the University would penalize him for absenteeism without a valid excuse.

Baker testified he followed his usual policy on the day in question. He got up at 4:30 a. m. and drove a fixed route around the City of Arlington. He listened to the radio and weather reports the preceding night. When he arrived at the University about 5:30 a. m. he asked its own police force to check with Dallas and Fort Worth Police Departments for road conditions so that if the reports he received indicated the school should be closed, it would allow the News Information Service time to notify the local television and radio stations. After all of this information was obtained he made the decision not to close the classes.

The University authorities had the discretion to determine whether or not to cancel classes on that day. They had established a policy in regard to cancelling classes, and they followed that policy on the day in question. This act of discretion of the said governmental unit falls within the provisions of Sec. 14(7) of the Act.

In *State v. Terrell*, 588 S.W.2d 784 (Tex. 1979), the court had before it a case in which a highway patrolman, who was not using warning lights or siren, pulled onto the road to chase a speeder and then collided with the driver of a motor vehicle. Another exception to governmental immunity is contained in the Act which provides that the negligent use of motor vehicles can subject the state to liability. The claim in *Terrell, supra*, at 787 is the state had a policy of having their patrolmen pursue speeders and in this particular instance, that policy was negligently performed. In discussing the law, the court held:

"Section 14(7) excludes liability for all claims based on a government's failure to perform an act when the law leaves performance of the act to the *discretion* of the government. Section 14(7) appears to be broad enough to encompass the exclusion for failure to provide police or fire protection. As we understand the two provisions, the purpose of both is the same: to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions. The interests to be served by these provisions are several–*e. g.*, effective, unfettered performance of officials in making policy decisions and the maintenance of the separation of powers between the executive, legislative, and judicial branches of government."

Under Akers' theory, the University would have been liable had Akers become injured on his way to the University when he stepped on the ice at his own apartment house, skidded on a slick street, or had a car wreck because another driver lost control of

his vehicle on the slippery streets. It is our opinion that this extends the University's liability beyond that intended by the Act.

The purpose of Sec. 14(7) as enacted was to avoid a judicial review that would question the wisdom of a government's exercise of discretion in making policy decisions.

We have considered each of the points of error and sustain each.

Judgment is reversed and rendered.