Donn L. NORTON, Appellant,

v.

BRAZOS COUNTY, Appellee.

No. C3020.

Court of Appeals of Texas,
Houston (14th Dist.).

July 8, 1982.

Joe D. Roth, Houston, for appellant.

William R. Vance, Bryan, for appellee.

Before J. CURTISS BROWN, C.J., and MORSE and JAMES, JJ.

**J. CURTISS BROWN, Chief Justice.**

This appeal concerns the extent of certain exemptions to governmental liability under the Texas Tort Claims Act, Tex.Rev.Civ. Stat.Ann. art. 6252–19 (Vernon 1970) (hereafter Act). Appellant brought this suit against appellee seeking recovery under the Act for personal injuries he received while incarcerated in the Brazos County jail. Appellant claimed that while he was assigned to work in the jail kitchen his hand became caught in a bacon slicing machine, thereby causing him severe injuries. He brought suit alleging appellee's negligence in failing to promptly secure the machine, to provide a safety guard on the machine and to maintain it in proper repair. Appellee responded with a Plea in Abatement contending the facts pled by appellant did not state a cause of action for which it could be liable under the provisions of the Tort Claims Act. The trial court granted the Plea in Abatement, holding that appellee was covered by certain exemptions to the Act. Appellant gave timely notice of appeal. We now reverse.

The doctrine of governmental or sovereign immunity is still the rule in the State of Texas. Generally speaking, the state cannot be sued in its own courts for alleged negligence in the carrying out of its governmental functions. *University of Texas at Arlington v. Akers,* 607 S.W.2d 283 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *Townsend v. Memorial Medical Center,* 529 S.W.2d 264 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). The exception to this general rule, however, is found in the Texas Tort Claims Act, which provides for a limited waiver of sovereign immunity. The waiver claimed by appellant to apply to his case is found in Section 3 of the Act, which provides in pertinent part:

Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, . . . under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state, or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state.

Appellee concedes it is covered by this provision and that its immunity from suit is effectively waived. Appellee asserts in response, however, that the claimed acts of negligence came within the exemptions to liability found in Section 14 of the Act. In particular, appellee maintains the two following provisions apply to this case:

Sec. 14. The provisions of this Act shall not apply to:

\*　　\*　　\*　　\*　　\*　　\*

(7) Any claim based upon the failure of a unit of government to perform any act which said unit of government is not required by law to perform. If the law leaves the performance or nonperformance of an act to the discretion of the unit of government, its decision not to do the act, or its failure to make a decision

thereon, shall not form the basis for a claim under this Act.

\*  \*  \*  \*  \*  \*

(9) Any claim based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection or rebellion or arising out of the failure to provide, or the method of providing, police or fire protection.

The sole question before us, therefore, is whether the alleged negligence of appellee in the operation of its kitchen is exempt under either of these provisions. Since both parties have briefed and argued these exemptions in reverse order, we shall so consider them.

■ Appellee relies on the second clause of exemption (9), which provides immunity from any claim based on "the method of providing, police or fire protection." Appellee directs us to the case of *Jenkins v. State,* 570 S.W.2d 175, 179 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ), where this Court read the term "police protection" to include the prevention of crime and the apprehension, punishment and rehabilitation of criminals. Appellee understandably reads this exemption broadly. Exemption (9), however, does not give the state complete immunity for all acts that would come under the definition of police protection. In *State v. Terrell,* 588 S.W.2d 784 (Tex. 1979), the Supreme Court held that the second clause of exemption (9) is "clearly designated to avoid judicial review of the policy decisions that governments must make in deciding how much, if any, police or fire protection to provide for a community." *Id.* at 787. This language has been interpreted to mean that:

. . . if the negligence alleged related to the formulation of policy, the governmental entity remains immune from liability. If however, the negligence is in the manner in which the policy is implemented, liability may exist under the Act.

*Forbus v. City of Denton,* 595 S.W.2d 621, 623 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). *Forbus* involved a situation where the family of a deceased prisoner sued the city of Denton for using mattress-es in the city jail that emitted toxic fumes when burned. In reversing the summary judgment for the city, the Fort Worth Court held the decision of whether to provide a mattress was a policy decision falling within the exemptions of the Act. The decision as to which particular type or brand of mattress to use, however, was merely incidental to the policy to provide a mattress. "It is thus related to the implementation of a formulated policy and is not exempt from an attack on the grounds of negligence." *Id.* Exemption (9) did not apply and immunity was waived.

■ This Court has written two recent decisions we believe conclusively show, as do the cases already discussed, that appellee is not entitled to the protections of exemption (9). In both *Cuddy v. Texas Department of Corrections,* 578 S.W.2d 522, 524 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.), and *Jenkins v. State, supra,* this Court held that Section 14(9):

does not shield governmental entities from liability for injuries arising out of their failure to provide, or method for providing, services which are only incidental to, and not integral parts of, the prevention of crime and the apprehension, punishment and rehabilitation of criminals.

The key question to be asked in these situations is whether the alleged acts of negligence are merely actions or omissions *incidental to the policy of police protection.* In *Cuddy,* we found that the procedures used by TDC to clear paths in the state park were incidental to police protection. In *Jenkins,* the particular medical procedures used in a penal institution were also seen as incidental to the prevention of crime or the rehabilitation of criminals. In both cases the policy of the rehabilitation of criminals was not attacked, but merely the incidental procedures of carrying out of those policies. We adhere to our reasoning in *Cuddy* and *Jenkins* and conclude the particular methods of providing the care and feeding of inmates, including the maintenance of kitchen equipment, is only incidental to, and not an integral part of, the rehabilitation of

criminals. The alleged negligence here does not lie in the formulation of any policy that needs protection from suit, but in the carrying out of that policy. Section 14(9) is not applicable under the facts of this case. *Terrell, supra; Forbus, supra; Jenkins, supra. See:* Larkin, *The "Policy Decision" Exemption of the Texas Tort Claims Act: State v. Terrell,* 32 Baylor L.Rev. 403 (1980).

Section 14(7) of the Act is also inapplicable under the facts of this case. As quoted above, exemption (7) grants immunity for any claim based on the failure of a governmental unit to perform an act it is not required by law to perform. This exemption excludes from liability discretionary acts of the government. As the Supreme Court stated when it considered exemption (7) in conjunction with exemption (9):

> Section 14(7) excludes liability for all claims based on a government's failure to perform an act when the law leaves performance of the act to the *discretion* of the government. Section 14(7) appears to be broad enough to encompass the exclusion for failure to provide police or fire protection. As we understand the two provisions, the purpose of both is the same: to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions.

*Terrell,* 588 S.W.2d at 787. As we have already stated, the operation and maintenance of kitchen equipment in county jails is not a policy decision that needs protection, but is only a procedure for carrying out that policy. There is no review of a policy decision here.

Second, exemption (7) is clearly designated for *discretionary* acts of the government. The operation and maintenance of a jail is an act each county is required to do by law. *See:* Article 5115, et seq. Tex.Rev.Civ.Stat.Ann. (Vernon Supp.1981). Article 5115 specifically directs counties to provide safe and suitable jails and to insure that "food is prepared and served in a palatable and sanitary man-

ner..." *Id.* This article does not require counties to operate jail kitchens, but only to provide adequate food for inmates. The decision whether to prepare food or have it catered is therefore a decision left to the discretion of the county. Once the decision to provide a kitchen has been made, however, those decisions incidental to the formation of policy, such as the daily operation and maintenance of kitchen equipment, cannot be seen as immune under the exemptions of the Act. Because appellant does not question the decision to operate the kitchen but only the negligent manner in which it was done, there was no issue of discretionary policy formulation involved in this case that came under exemption (7)'s provisions.

Appellee maintains that by holding neither exemption applies, this court places itself on the "horns of a dilemma." Appellee argues it is incongruous to hold the method of slicing bacon is an incidental part of providing police protection, while at the same time to hold the procedure of food preparation is not discretionary. We disagree. Appellee is attempting to equate a finding of "incidental" under exemption (9) with a definition "discretionary" under exemption (7). If we were to accept appellee's reasoning, then a finding that exemption (9) does not apply would automatically guarantee immunity under exemption (7). Therefore, the state could defensively plead Section 14(7) and (9) and forever escape liability because one exemption would always apply. We do not believe this was the intent of the legislature in the formation of the Act, and we reject this argument.

Instead, we believe it is appellee who finds itself on the "horns of a dilemma." Once the provisions of the Act apply and governmental immunity is waived, it is the state's burden to show the application of one or more of the exemptions of Section 14. Appellee has asserted its exclusion from the Act by claiming first, that the procedure of slicing bacon is a decision involving the formation of policy under police protection, and then second, that this procedure is left to its discretion as a unit of

government. Appellee cannot have it both ways. Under the facts of this case, appellee can not have it either way. The safe operation of a jail kitchen, once undertaken by the county, is an obligation appellee is required to do by law. The procedures of operation, however, are not integral to the formation of jail policy. Appellant's ground of error is sustained.

■ Before closing, a final observation not raised by appellant is appropriate. This suit was terminated at trial through a Plea in Abatement, which we feel was the incorrect mechanism to resolve the case. To use a Plea in Abatement to resolve claims raised under the Tort Claims Act is to revive the general demurrer discarded by Rule 90, Tex.R.Civ.P.; *See: Herring v. Texas Department of Corrections,* 500 S.W.2d 718, 720 (Tex.Civ.App.—Houston [14th Dist.] 1973), *aff'd,* 513 S.W.2d 6 (Tex.1974). We therefore do not believe the protective features of special exception procedures should have been circumvented by a Plea in Abatement under the facts in this case. The judgment of the trial court is reversed and the case is remanded.